UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SHUIFA YING,
*Plaintiff*,


-against-                                        CASE NO.  08 CIV 4282
                                                 JUDGE P. KEVIN CASTEL

CHINA CHEF INC.,
SHIZHONG OU, and LIMING HUANG,
*Defendants*.
-----------------------------------------------------------X


# MEMORANDUM OF LAW
## IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS OR CHANGE VENUE



FRANK XU L.L.P.
305 BROADWAY STE 701
NEW YORK, NY 10007
Tel: 212/897-5866 Fax: 212/901-0499
*Attorney for Plaintiff*

## **Question Presented**

By intentional design and control, defendants arranged that plaintiff Mr.

Ying worked for years in a condition akin to slavery in violation of federal

Constitution and laws, and caused him suffer spinal pain, diabetes, and other

permanent injuries. The nature of the tortious labor covenant is uniquely premised

upon Mr. Ying's race and national origin. Does Mr. Ying have a civil cause of

action to redress defendants' wrongs under federal law?

## Argument

## I. Because of Plaintiff Mr. Ying's Claim of Involuntary Servitude Akin to Slavery in Violation of Federal Constitution and Laws, His Complaint Invokes this Court's Original Jurisdiction on Federal Question.

Article III of the U.S. Constitution extends judicial power of the United States "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made under their Authority." U.S. CONST. art. III, § 2. Federal question jurisdiction statute, first passed in 1875 and preserved substantially unchanged to the present, confers federal district courts original jurisdiction on all types of federal question cases.[1]

A party invokes original federal question jurisdiction if his complaint pleads a cause of action that arises under the federal Constitution and laws prohibiting involuntary servitude akin to slavery and discrimination based on race and/or national origin. Traditionally, the scope of cases arising under the federal Constitution has been broadly construed.[2] Osborn v. Bank of United States, 22 U.S. (9 Wheat.) 738 (1824). The Thirteenth Amendment to the U.S. Constitution

---

[1] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331 (2006).

[2] For cases arising under the federal Constitution, Osborn's expansive reading of "the 'cases arising under' language of the Constitution is appropriate. [Because] [i]t leaves room for Congress to grant such particular jurisdiction as may in the future be seen to be necessary." 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3562 (2d ed. 1984). In Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480 (1983), the Supreme court in a unanimous opinion by Chief Justice Burger, explained that Osborn "reflects a broad conception of 'arising under' jurisdiction, according to which Congress may confer on the federal courts jurisdiction over any case or controversy that might call for the application of federal law."

declares that "(n)either slavery nor involuntary servitude . . . shall exist within the United States." It has long been established that this Amendment is "self-executing without any ancillary legislation, so far as its terms are applicable to any existing state of circumstances. By its own unaided force it abolished slavery, and established universal freedom." Civil Rights Cases, 109 U.S. 3, 20 (1883); United States v. Shackney, 333 F.2d 475, 485-86 (2nd Cir. 1964) (The Thirteenth Amendment abolishes all practices involving enforced subjection or compulsion akin to slavery and is not addressed solely to state actions.). In addition, an enforceable civil cause of action can be created by implication to redress wrongs prohibited by Constitutional Amendments; For example, in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the U.S. Supreme Court held that Fourth Amendment provides a private cause of action against federal agents for damages resulting from unreasonable searches and seizures in violation of Constitution.

Secondly, under federal statutes regulating civil rights and labor contracts,[3] federal private cause of action is authorized when the nature of the tortious

---

[3] Private federal civil action for damages resulting from unfair labor practices may also be authorized under The Fair Labor Standards Act of 1938, as Amended, 29 U.S.C. § 201-219 (2006) and Taft-Hartley Act of 1947, 29 U.S.C. § 141-187 (2006).

employment contract in question is uniquely premised upon a labor's race and/or national origin. The Civil Rights Act of 1866[4] provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981 (2006).

In this case, the defendants who own a syndicate of high-end restaurants knowingly arranged that Mr. Ying be brought to the United States and subjected him to work for a nominal wage in a restrained condition akin to modern slavery. Under that unique arrangement, Mr. Ying had no reasonable choice to a better bargain except work 12 hours per day for years so that he would be able to repay the high interest loan owed to those who arranged the labor trip. Motivated to deprive Mr. Ying any meaningful access to recourse or remedy because of his vulnerable legal status, the defendants' contractual design imposed invisible compulsion upon Mr. Ying's mind and body, a type of restraint that is more vicious than traditional iron chains and shackles.

---

[4] The U.S. Supreme Court has construed the 1866 civil rights statute as creating a private right of action against private employers with respect to contractual discrimination on the basis of race and/or national origin. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 436 (1968) (Civil Rights Act of 1866 was designed to prohibit all kinds of racial discrimination with respect to rights enumerated therein. Neither adoption of Fourteenth Amendment nor subsequent re-adoption of Civil Rights Act of 1866 was meant to limit application of Act to state action.).

Mr. Ying's spinal injury, diabetes, and other medical problems were directly caused by the over-hazardous, high intensity, and inhumanely tortious labor conditions designed and controlled by the defendants, in which Mr. Ying had to stand in a confined and over-heated kitchen full of cooking-oil spill and noxious smoke and cook the dishes all the time without adequate rest. For all those years he had no personal space, and slept in the cold marble restaurant floor in the night. He had no access to outside world for recreation or entertainment of any kind. Even though he is related to the individual defendants, he was squeezed and pushed around as their covenant labor without any showing of human empathy or dignity, as if he is no flesh and blood.

Considering the above facts as a whole, federal question jurisdiction stands in this case because Mr. Ying's civil cause of action arises under Thirteenth Amendment to U.S. Constitution prohibiting involuntary servitude akin to slavery.[5] Secondly, the federal cause of action is also warranted under the Civil Rights Act of 1866 because the nature of the labor contract is uniquely premised upon Mr. Ying's race and/or national origin. Only due to his Chinese race and national origin was Mr. Ying contractually reduced to such a humiliating and degrading status

---

[5] Notably, the defendants' tortious employment arrangement is also punishable under federal criminal law. Congress has imposed criminal penalties for private involuntary servitude akin to slavery in 18 U.S.C. § 1584 (2006).

akin to slave labor; No other people of different race and/or national origin would be treated as such.

In addition, because the state law claims contained in the complaint and the federal claims that invoke this court's original jurisdiction derive from a common nucleus of operative fact, this court possesses supplemental jurisdiction power to hear the whole constitutional case. 28 U.S.C. § 1367(a) (2006); <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 725 (1966).

**II. Because of the Federal Question involved, this Court May Exercise Personal Jurisdiction over Out-of-State Defendants.**
**a. Service of Process is Valid under New York Long Arm Statute.**

Personal service of process upon defendants in Alabama is valid for this court to acquire personal jurisdiction. For cases arising directly under federal Constitution and laws, federal district courts exercise sovereignty of the Union and possess the power to authorize service without state as a matter of federal common law. Procedural limitation based on state territory lines is not to be construed to defeat the purpose of federal question jurisdiction. Johnson Creative Arts, Inc. v. Wool Masters, Inc., 743 F.2d 947, 950 (1st Cir. 1984) ("The Constitution does not require the federal districts to follow state boundaries. The limitation is imposed by the Federal Rules of Civil Procedure.") (Internal citation omitted.).

Under the Federal Rules of Civil Procedure, service of a summons is effective to establish personal jurisdiction over a defendant who could be subject to the state court jurisdiction in the state where the district court is located. Fed. R. Civ. P. 4(k)(1)(A). For a cause of action arising from an out-of-state tortious act that causes injury within the state, New York long-arm statute provides jurisdiction basis in pertinent part:

McKinney's CPLR § 302. Personal jurisdiction by acts of non-domiciliaries (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. N.Y. CPLR § 302(a)(3)(ii).

According to New York state court's expansive reading, "[t]he conferral of jurisdiction under [New York CPLR § 302(a)(3)(ii)] rests on five elements: First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce." LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214 (2000).

The first three elements are clearly met in this case. By subjecting Mr. Ying in a condition akin to slave labor, the defendants committed an out-of-state tortious act; and the causes of action arose from the very torts in violation of federal Constitution and laws. Mr. Ying's spinal pain, diabetes, and other permanent injuries were directly caused by defendants' tortious labor arrangement, in which

he was forced to continuously work as a high-intensive labor 12 hours per day in a confined and over-hazardous condition. His spinal cords sustained various damages while he was standing cooking all the time without adequate rest, and his overall heath, mentally and physically, was severely and irreparably deteriorated.

The defendants clearly expected and foresaw that their tortious act would impose consequence - Mr. Ying's extensive injury - within the state. In March 2007, Mr. Ying came to New York City to treat his severe back pain, and in March 2008 his much deteriorated condition forced him to have a spinal micro-discectomy surgery in New York. Based on their intimate knowledge of these events, the defendants clearly foresaw and expected that Mr. Ying would have no alternative but to stay and seek further treatment in New York City after their abandonment due to his much reduced health.

The final requirement that the defendants derive "substantial revenue from interstate or international commerce" is also met in this case. The defendants own and operate a syndicate of restaurants that import labors, decoration and construction materials from P.R. China, purchase meat, grain, and other raw supplies in both U.S. and international markets, and derive revenue from customers coming from all over the world. Because of its unique nature and scale, defendants' business imposes an indelible impact upon the nation as a whole; and

as such it affects interstate commerce. More importantly, New York long-arm statutory requirement of "deriving substantial revenue from interstate or international commerce" is imposed "not to guarantee an overall contact with New York, but to assure that the defendant is economically big enough to be able to defend a New York law suit without undue hardship." David D. Siegel, New York Practice § 88 (4th ed. 2005). It is specially so when the defendants' wealth and power were built upon the very inhumane labor arrangements that caused the injuries and damages Mr. Ying complained for.

**b. This Court's Exercise of Personal Jurisdiction Does not Offend Constitutional Due Process.**

Because federal question jurisdiction is premised on the principle that the federal judiciary should have authority to interpret and apply federal law, for cases arising under federal law, constitutional limits of due process is analyzed under the Fifth rather than the Fourteenth Amendment to the U.S. Constitution. In re Chase & Sanborn Corp., 835 F.2d 1341, 1344 (11th Cir. 1988) ("The due process clause of the Fifth Amendment constrains a federal court's power to acquire personal jurisdiction via nationwide service of process."). However, federal court opinions interpreting due process clause of the Fourteenth Amendment may provide

important guidance in determining due process restraints on personal jurisdiction

in federal questions cases involving personal service without state.

In articulating the due process limits of the Fourteenth Amendment, the U.S.

Supreme Court declared in International Shoe Co. v. Washington, 326 U.S. 310

(1945), that due process requires only that the defendants "have certain minimum

contacts with [the forum] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'" Id., at 316 (Internal

citation omitted.). In World-Wide Volkswagen v. Woodson, 444 U.S. 286 (1980),

the court further clarified that "[t]he concept of minimum contacts, in turn, can be

seen to perform two related, but distinguishable, functions. It protects the

defendant against the burdens of litigating in a distant or inconvenient forum. And

it acts to ensure that the States through their courts, do not reach out beyond the

limits imposed on them by their status as coequal sovereigns in a federal system."

Id., at 291-92.

The function of protecting defendants against inconvenient litigation is

typically described in terms of "fair play" or "reasonableness." "Implicit in this

emphasis on reasonableness is the understanding that the burden on the defendant,

while always a primary concern, will in an appropriate case be considered in light

of other relevant factors, including the forum State's interest in adjudicating the

dispute; the plaintiff's interest in obtaining convenient and effective relief, at least

when that interest is not adequately protected by the plaintiff's power to choose the

forum; the interstate judicial system's interest in obtaining the most efficient

resolution of controversies; and the shared interest of the several States in

furthering fundamental substantive social policies." Id. (Internal citation omitted.).

The court acknowledges, however, that the function of litigation

convenience based on traditional territorial limitation of state sovereignty is in

large part based on the notion of "interstate federalism embodied in the

Constitution." Id., at 293. Because federal courts invoke national sovereignty in

federal question cases, the relevant territorial inquiry is the nation as a whole rather

than a defendant's contact with the forum state in which the federal court is

located. A defendant's minimum contact with the United States satisfies the

requirement of "purposeful availment" in federal question cases; contact with the

specific forum state is not constitutionally required. See Securities and Exchange

Comm'n v. Carrillo, 115 F.3d 1540, 1543-44 (11th Cir.1997); 4 Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 1068.1 (3d ed. 2002)

(Under Fifth Amendment, a defendant's physical contacts with the forum state play

no magical role. "As a practical matter . . . state lines cannot provide an accurate

measure of the burdens that would be imposed on a defendant by requiring him to

defend an action in a particular forum. There is nothing inherently burdensome about crossing a state line.").

Interpreting the Fourteenth Amendment due process as a defendant's liberty interest in not being subject to the binding judgment of a state forum with which he has established no meaningful "contacts, ties, or relations," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting International Shoe Co., 326 U.S. at 319), the court reasoned that due process under the Fourteenth Amendment requires that a defendant reasonably anticipates being haled into forum state court if by its act "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). "[T]his requirement of 'fair warning' is clearly satisfied if the defendant has 'purposefully directed' his activities at residents of the forum." Burger King Corp., 471 U.S. at 472 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).

To determine whether it satisfies the due process requirement under Fifth Amendment to assert personal jurisdiction over an out-of-state defendant in federal question cases, a federal court may assess reasonableness factors akin to the Fourteenth Amendment analysis, and balance the potential burdens imposed upon the defendant against the federal interest in efficient adjudication of dispute,

plaintiff's interest in convenient and effective relief, and more importantly in

federal question cases, the federal judicial system's interest in obtaining most

efficient resolution of controversies, and furtherance of fundamental federal

substantive social policies, such as uniform interpretation of federal law. Especially

in this case, where the civil cause of action arose under the federal Constitution and

laws prohibiting slavery and discrimination based on race and/or national origin,

federal interest and policy of unified interpretation of federal law and protecting

plaintiff against local prejudice clearly outweighs consideration of defendants'

inconvenience or hardship.

However, courts must engage in this balancing only if a defendant has

established a compelling case that his liberty interests would actually be infringed.

Burger King Corp., 471 U.S. at 477 (A defendant challenging personal jurisdiction

"must present a compelling case that the presence of some other considerations

would render jurisdiction unreasonable."). Mere physical distance between a

defendant's residence and the federal forum court does not carry the burden of

establishing unconstitutional inconvenience, especially in light of the fact the

modern means of transportation and communication has rendered the traditional

state territorial limitation obsolete. See Maryellen Fullerton, Constitutional Limits

on Nationwide Personal Jurisdiction in the Federal Courts, 79 Nw.U.L.Rev. 1, 40

(1984) ("While distant litigation often is more bothersome than litigation at home, inconvenience that is not substantial should be ignored for constitutional purposes."). Only when a defendant makes a compelling case that litigation in plaintiff's chosen forum would be "so gravely difficult and inconvenient that [a party] will for all practical purposes be deprived of his day in court," Burger King Corp., 471 U.S. at 486 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)), should a federal court weigh the federal interests and policies favoring the exercise of jurisdiction. Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 946 (11th Cir. 1997).

In this case, by imposing into New York City the injury caused by their intentional federal law violations, the defendants reasonably foresaw and clearly anticipated that they would be haled into New York courts in case Mr. Ying seeks to redress the wrongs committed. They have also established substantial connections with New York City by their many harassing phone calls to Mr. Ying, and by retaining New York lawyers as their agent and counsel. It satisfies constitutional due process to require the defendants to answer Mr. Ying's civil lawsuit when they reasonably expected, foresaw, and knowingly projected the injury within state; it is also equitable to provide Mr. Ying a home forum when his financial restraints would practically deprive him of any meaningful remedy in

Alabama courts, as compared to defendants' easy access to critical resources and

local representation.

### III. Venue Defects are Waived Because Defendants' Objection is Untimely and Inadequate.

Like personal jurisdiction, venue objections must be timely and sufficiently raised. Federal venue statutes create mere "personal privilege," Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979), which "must be asserted at latest before expiration of period allotted for entering a general appearance and challenging the merits; [otherwise, it is waived.] . . . To hold that such a privilege may be retained until after the suit has reached the stage for dealing with the merits and then be asserted would be in our opinion subversive of orderly procedure and make for harmful delay and confusion." Commercial Cas. Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 179-80 (1929). Venue defects are waived by a defendant who defaults. Id.; 28 U.S.C. § 1406(b) (2006) (Requires a party to impose timely and sufficient objection to plaintiff's choice of venue.); see also 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3829 (3d ed. 2002).

In this case, venue is correctly laid in the Southern District of New York because Mr. Ying resides in the New York City at the time of filing of this action.[6]

---

[6] Modern federal venue statutes have been considerably liberalized and broadly construed. Specifically, Congress has expressed its desire to treat a personal injury plaintiff's residence at time of filing as a proper venue. The Lawsuit Abuse Reduction Act of 2005 provides:

Prevention of Forum Shopping–

(a) In general. – Subject to subsection (b), a personal injury claim filed in State or Federal court may be filed only in the State and, within that State, in the county (or Federal District) in which–

The defendants' objection to venue defects, if any, are forfeited by their own

neglect, laches, and deliberate failure to timely move this court or challenge the

merits, especially in light of the fact that they were personally served with the

summons and complaint affording ample notice and opportunity to be heard. After

permissible answering time has long passed, defendants' motion on grounds of

venue inconvenience shows that they lack good faith to redress the wrongs

committed and instead only intend to use procedural tactics to delay the orderly

court proceedings.

Because venue is "primarily a matter of choosing a convenient forum,"

Wachovia Bank v. Schmidt, 546 U.S. 303, 316 (2006) (quoting Leroy, 443 U.S. at

180); see also Burlington Northern R. Co. v. Ford, 504 U.S. 648, 651 (1992)

("Venue rules generally reflect equity or expediency in resolving disparate interests

of parties to a lawsuit in the place of trial . . . The forum preferable to one party

may be undesirable to another, and the adjustment of such warring interests is a

valid state concern."), a plaintiff's choice of home forum is entitled to considerable

deference. Steinberg & Lyman v. Takacs, 690 F.Supp. 263, 266 (S.D.N.Y. 1988).

---

(1) the person bringing the claim, including an estate in the case of a decedent and a parent or guardian in the case of a minor or incompetent–
(A) *resides at the time of filing*; or
(B) resided at the time of the alleged injury; or
(2) the alleged injury or circumstances giving to the personal injury claim allegedly occurred; or
(3) the defendant's principal place of business is located.
(b) DEFINITIONS OF MOST APPROPRIATE FORUM. (omitted.)
Lawsuit Abuse Reduction Act of 2005, House Bill 420, 109th Cong., 1ST Sess.

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum rarely should be disturbed," Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947), "even if the plaintiff avails itself of liberal venue standards to file in a strategic forum." Ellis v. Costco Wholesale Corp., 372 F.Supp.2d 530, 538 (N.D. Cal. 2005). The burden is upon the moving party to make a compelling case that a transfer of venue is appropriate under 28 U.S.C. § 1404(a). U.S. v. One Oil Painting Entitled "Femme en Blanc" by Pablo Picasso, 362 F.Supp.2d 1175, 1185 (D.C. Cal. 2005) (Defendant seeking to transfer venue must make strong showing of inconvenience before plaintiff's choice of forum is upset.).

Defendants' motion raised several factors that presumably relate to their own convenience. However, because of the considerable deference accorded to plaintiff's chosen forum, a defendant that moves on venue grounds bears a heavy burden of establishing a compelling case that balance of convenience is strongly in favor of the moving party. Transfer motion will not be granted if the result is merely to shift the inconvenience between the parties; because no overall advantage would be gained and no interest of justice would be served by the venue change. The U.S. Supreme Court explained: "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." Van Dusen v. Barrack, 376 U.S. 612, 646 (1964). A change of

venue is clearly not warranted in this case because it would only shift inconvenience between the parties and impose greater and prohibitive inconvenience upon Mr. Ying, as compared to defendants' easy access to transportation, local representation, and other critical resources.

Speculating that "presumably, most, if not all witnesses, are located in Alabama," defendants also raised the issue of possible witness inconvenience, including the reach of federal process to compel unwilling witnesses as a reason to demand venue transfer under 28 U.S.C. 1404(a).

In a motion for change of venue, consideration based on witness convenience is clearly an important factor; yet it is not dispositive. It must be weighed against other relevant factors under particular circumstances of the case, such as the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of the deposition testimony. Anderson v. Sullivan, 329 F.Supp.2d 1058, 1061 (D.C.N.D. 2004). To evaluate claims based on witness convenience, "a court considering a transfer motion must look to the nature and quality of the witnesses' testimony with respect to the issues, not just the number of witnesses in each venue." Forcillo v. LeMond Fitness, Inc., 220 F.R.D. 550, 553 (S.D. Ill. 2004). More importantly, a party seeking transfer of venue based on witness inconvenience must specify clearly the key witnesses to be called and

make a general statement of what their testimony will cover. <u>Z-Tel</u>

<u>Communications, Inc. v. SBC Communications, Inc.</u>, 331 F.Supp.2d 567, 574

(E.D. Tex. 2004). Without any disclosure as to the names, location, proposed

testimony, the defendants failed to demonstrate that the remote possibility of

witness inconvenience, if any, would affect this court's equitable discretion on

venue transfer motion under 28 U.S.C. § 1404(a).

　　　The defendants listed "the location of relevant documents and the relative

ease of access" as another factor for demanding venue transfer. Surely the location

of records and documents relevant to the litigation is a factor that may affect the

exact geographical location of transferee forum, if submission of those records and

documents would materially prejudice the defendants or otherwise deprive them

effective defense in the merits. However, in modern litigations most records and

documents can be cheaply and easily reproduced and transported; therefore their

location is entitled to little weight, especially when the moving party failed to

assert undue hardship. A mere allegation based on the location of books and

records is not adequate to prevail in a transfer motion. For this factor to carry any

weight, the moving party must establish the exact location of the documents in

question, their importance to the resolution of the case, and their inability to be

moved or effectively copied. <u>See</u> <u>Family Realty & Constr. Co. v. Manufacturers &</u> <u>Traders Trust Co.</u>, 931 F.Supp. 141, 144 (N.D.N.Y. 1996).

Defendants also protested that this case should be transferred to "somewhere in Alabama" because situs of the operative events is in Alabama. However, to carry the burden of persuasion necessary for a transfer venue motion, it is not enough merely to show that plaintiff's claims arose somewhere else, because situs of alleged federal law violation "does not affect the determination of where the claims brought in this court should be litigated." <u>Steinberg & Lyman v. Takacs</u>, 690 F.Supp. 263, 267 (S.D.N.Y. 1988). It is not a pertinent factor under federal venue transfer statutes.

Finally, it is well established that the "interest of justice" is the key factor to be considered on its own merits and is of paramount importance in a federal court's equitable discretion on venue transfer motion. "Federal courts have considered this factor decisive - outweighing the other statutory factors - in ruling on a change of venue motion even though the convenience of the parties and witnesses pointed in a different direction." 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3854 (3d ed. 2002); <u>see also</u> <u>Coffey v.</u> <u>Van Dorn Iron Works</u>, 796 F.2d 217, 221 (7th Cir. 1986) ("The 'interest of justice' analysis relates to the efficient functioning of the courts, not to the merits of the

underlying dispute. It is also not a vehicle for resurrecting a claim lost because the plaintiff erred in [his] initial choice of forums."). Because of this special focus upon the interest of justice consideration, venue is an inherently equitable doctrine.

In this case, Mr. Ying resides and domiciles in New York City, at least for jurisdiction and venue purpose.[7] His injury as a result of defendants' tortious labor arrangement in violation of federal law is located in New York City. The relevant medical records, doctors that have treated Mr. Ying are all located in this forum. Because Mr. Ying has no financial means to travel to and adequately litigate his case "somewhere in Alabama;" a venue transfer order would therefore effectively deprive his day in court, preclude any meaningful remedy, and cast undue hardship and detrimental prejudice upon him. On the other hand, as analyzed previously, the defendants have established substantial connections with the New York forum. And due to their relatively easy access to critical resources and local representation, the defendants would not incur undue hardship or inconvenience in any meaningful sense if they contest the merits of this case in New York City. Considering these unique facts and circumstances and balance equity, defendants' motion to change venue clearly should be denied.

---

[7] Mr. Ying's New York City residence is originally stated in the Summons. However, when the case was filed, the court clerk requested use of standard court summon form, which has no place to fill in the plaintiff's residence as venue basis.

Page 24 of  24

## **Conclusion**

For above reasons, it is respectfully submitted that the defendants' motion to dismiss or change venue be denied, and Mr. Ying's application for judgment by default be entered, and any further relief this court may deem just and equitable.

Dated: July 11, 2008
      New York, New York

                        X _Frank Xu_

                        Frank Xu, Esq.

                        FRANK XU L.L.P.
                        305 BROADWAY STE 701
                        NEW YORK, NY 10007
                        Tel: 212/897-5866 Fax: 212/901-0499
                        *Attorney for Plaintiff*

## AFFIDAVIT OF SERVICE

Frank Xu, Esq., an attorney duly admitted before the bar of the New York state courts, affirms under penalty of perjury:

That On July 11, 2008, I served a true copy of MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR CHANGE VENUE upon:

> Laurence H. Olive, Esq.
> 128 Mott Street, Ste 706
> New York, New York 10013
> Tel: 212/608-1818
> *Attorney for Defendants*

by first class mail.

Dated: July 11, 2008
New York, New York

X *Frank Xu*
Frank Xu, Esq.

FRANK XU L.L.P.
305 BROADWAY STE 701
NEW YORK, NY 10007
Tel: 212/897-5866 Fax: 212/901-0499
*Attorney for Plaintiff*